Your Honor, good morning. I am pleased to court Enrique Cerna representing the Mexican States of Tamaulipas, Veracruz. You heard my earlier admonition, you got to speak up. We've got mics, but you know, so we can hear you and even the council table. So if you do that, we won't miss your point. I got a little loud, Your Honor, but I will definitely speak up. All right, that's better. This court should reverse and it was granted by Judge Barbier, and we should, the Mexican States should have the right to go to trial. The Mexican States presented evidence in the fashion of the declarations of two ministers, the Minister of the Environment of the State of Tamaulipas and the Minister of the Environment of the State of Quintana Roo. Regardless of the legal framework that this court would like to apply, whether it's Mexican law or admiralty law, those declarations that were submitted proved that the Mexican States own, manage, control, administer. Let me ask you a question, because I realize that it's a difficult fit analytically to determine proprietary rights of the sovereign states and nation of Mexico in terms of what a bare boat charter is, but that being the case, tell me what claims the nation, Mexico as a nation has that it is asserted here, and why didn't Judge Barbier just consolidate your case and their case? Your Honor, the cases are completely independent. The Mexican States, FAUTSU, and the Mexican State of Tamaulipas sued back in 2010. The State of Tamaulipas was the first one to enact and respond to the up-and-coming oil, superficial oil and oil plume. Just answer my question. What separate claim does the nation of Mexico have from the states, because it filed a separate lawsuit, and why didn't somebody ask Judge Barbier to consolidate those suits? Your Honor, as to why they did not ask Judge Barbier to consolidate the suits, I have no clue. Why didn't you? That would have relieved you of a whole bunch of expense in pursuing this. Well, Your Honor, we have independent claims, Your Honor, to those of the Republic of Mexico. For example, we have different tax structures. The states cannot reclaim federal income and or federal income tax and our sales tax that are derived. Those are different. The states have their own budgets. Their states are in charge of their own coastlines. The states are in charge of their own nesting sites, for example, for turtle, which were affected species in this oil spill. They have their own budgets. They're autonomous. Wait a minute. So the nation of Mexico has certain turtle nesting sites and the states have other turtle nesting sites. Is that what you're contending? Your Honor, actually, the nesting sites are both protected by state and federal law. So there's always... What about the one recovery rule? Your Honor, our... Unless you're going to split the turtles, what is the recovery? The Mexican states only seek to recover what their budgets have expensed for the oil spill defense. And so... That was not the implication I drew from the tenor of the briefs. I thought they were looking for lost revenue from tourism or all sorts of consequential damages, not just cleanup costs. Your Honor, you are correct because the state of Tamaulipas and Quintana Roo and Veracruz have independent local taxes that are independent to those of the republic. And the damage is run in parallel. And in Mexico, there's the figure of concurrency. So the Mexican states acknowledge and acquiesce that federal law reaches all the way into their territory. And as such, they are the first protectors and defenders of it. And when you allege to and talk about the word nation, it's interesting to point out that the Mexican constitution does not define the term nation. Yet, the state constitutions do say that those states are autonomous and independent from the republic. Any claimant asserting a general maritime law negligence action based on these damages, any claimant... Yes, Your Honor. ...would have to reach the Robbins dry dock actionable level, correct? Sowing sufficient proprietary interests. Your Honor, even though we don't think Robbins applies given British Petroleum's and TransOcean's admissions of criminal... Moving aside. ...but moving aside from it and assuming so, the Mexican states do, Your Honor. Well, I know you say they do, but would you agree with me that parishes and states in the United States are bringing simultaneous suits? Yours is just the first that has gotten to this proprietary interest level. That is correct, Your Honor. And it is my understanding they all have their different damages and the separate set of circumstances that obviously lead to those damages. And the federal government, your federal government, is also obliged to reach this same actionable level. That is, in our opinion, correct. And as a matter of fact, conceded. And thus far, has Judge Barbier been consistent in applying that similar identical test to all these similarly situated persons? That is correct, Your Honor. And by the way, BP and TransOcean and Hal Burton all admit that the republic do meet those proprietary interests because they obviously claim that they are the owners or the title owners of the interests. Yet, what is very interesting and given the Fifth Circuit president regarding admiralty claims is the right of maintaining, regulating, enjoying, exploiting, the right of repair, the right of maintaining an asset are literally similar to what the Mexican states do. You know, if I were the trial judge here, and I'm highly . . . I'm never so presumptuous, but it just seems to me that the trial judge should take you and counsel for the nation of Mexico and say, go work this out between yourselves and then file one complaint because had you proceeded under the OPA, it seems to me you just have one right. Well, Your Honor, I'm going to have to tell you that up until this day, and even though we, the Mexican states, did sue under OPA originally in our complaints, we do not believe that OPA is the exclusive remedy both for the Mexican nation and the Mexican states. Now, I want to make very clear to this court that I'm only representing the Mexican states and not the Mexican nation. But your OPA position, I think I'm right if we just look at OPA preconditions, would be conclusive on all Mexican claimants because if you look at OPA as to foreign claimants, there's got to essentially be a treaty. Your Honor . . . And no one's pointed to a treaty yet. So, if OPA displacement applies here, no Mexican claimant will ever be able to recover. That is correct, Your Honor. Everybody would be completely displaced. Nonetheless, we believe that OPA does not displace Admiralty Law. But there wasn't much discussion of that, and that's a very consequential position. What was the district court's exact ruling on OPA displacement? It didn't reach it, right? He didn't get to the three-part framework. No, Your Honor. I do not . . . Well, Judge Barbier earlier alluded in his older orders that OPA did not displace maritime law. Now, with this particular case, I do not believe that Mexico has a treaty or an executive agreement with the United States regarding the qualification of 33 U.S.C. 2707. And it is very simple as to why, Your Honor. The Mexican oil industry belongs still, as of today, to the government. And it's an issue of sovereign immunity. And that means that there would have been no reciprocity had the accident occurred in Mexican waters and the Texas beaches been defiled. Is that correct? There's no reciprocity, and anybody here in Texas would have had to sue in the courts of Mexico and been confronted with sovereign immunity. Well, Your Honor, there is an energy reform going on in the country that . . . I understand that, but I'm saying, had this happened . . . you see my point, do you not? I do, Your Honor. Which is why, precisely why, OPA requires a treaty, because only in the case of a treaty will you have reciprocity. And that is correct. And that, by the way, I don't necessarily fault Mexico, because only in the United States do you have the breadth of damages available. So a treaty would have to solve the difficulties. And, Your Honor, Mexico and the United States, from what I understand, reached recently through the State Department a permit to drill in a very particular corner of the Gulf of Mexico that is very deep waters. And we were very hopeful that a treaty would establish reciprocity. Nonetheless, it is our position that through admiralty law, the Mexican states and, obviously, that's their case, but the Mexican Republic can eventually recover their economic damages caused by the result of this bill. And it is very consistent through this case that appellees give the Mexican states the ploy. They also acknowledge the fact that there are concurrency in the ways that federal law and state law do apply and merge. And it seems to me that they're trying to seek to expand the Robbins rule and raise the bar to make it to the tune that if we don't have a decree or a title to our state territory, even though we're autonomous and independent, then we don't have the right to reclaim. Where nowhere else we see- Well, you know, again, we run into this very vexing question about the state of the Mexican Constitution and the Mexican laws. And if the Constitution implies from Section 27 that whatever the states have is at the pleasure of the federal government, and you'll have to excuse me, but long ago, when I was studying a little bit about Mexico, long, long ago, I thought it was a far more centralized government than the United States is vis-a-vis our federation. Well, Your Honor, it certainly legally appears that way because of what's actually in print in the Constitution. That's always what's in print in the Constitution is usually a hurdle in- Our jurisdiction. And here, Your Honor, the problem with that interpretation is that the word nation is not defined in the Constitution, and it is the Mexican states that encompass the nation, which obviously then it is a republic represented, and it does have a federal government. The nature of your dialogue, these are sweeping, sweeping conclusions about the federal structure, existing federal structure of Mexico's state government relationship. Of course, Judge Barbier did his best to canvas this, but you're telling us there's no distinctive legal authority that belies the proposition he finds? Your Honor, the Mexican states are independent and autonomous and have their own Constitution. We're into the grid of facts about, yes, it looks like, and I don't mean to be light about this, but the turtles in particular, you see both entities protecting the turtles from this giant plume of oil. Yes, Your Honor. But you would think that there would be a legal, some legal expression that was categorical as to an issue this large. Your Honor, it is, and it happens to be concurrent jurisdiction. That term is very familiar to us in the United States, but what's your best authority as to what concurrent jurisdiction means as to property ownerships in Mexico? It would be Title, if I'm not mistaken, Title 5 of the GLNA, and literally, literally, and I won't get to it, Article 120 of the GLNA, and it is on page 44 of our brief, the coordination agreement, there are coordination agreements between federal and state with the purpose of having the state governments and the municipalities administer, conserve, and monitor the assets. And we've cited plenty of other entries in our brief, Your Honor, in which there is a parallel federal law and parallel state law that protect literally the same interests. So for example, let me take the case of the turtles. The state territory is where the nestings occur. It is overlapped by federal law, yeah, you have to protect the species. State law also protects the species. In the case of the state of Tamaulipas, the Tamaulipas was the first responders, because it was as close, you know, the state to the north, south to Texas. And so it was the state brigades that first got to those turtle nesting hatching sites to actually protect them, to barrier them, to make sure that whatever oil was getting on the beach was not going to harm. Now these are migratory species. The state of Tamaulipas, for example, does not have a Migratory Species Act. The federal republic does. That doesn't necessarily mean that the state of Tamaulipas does not enforce that federal Migratory Species Act that in Mexico. But, you know, this concurrent jurisdiction idea sounds to me like a pretty close parallel, although I said it's a very awkward situation, a pretty close parallel with a time charter. That is correct, Your Honor. And Robin Strydock said that the time charter couldn't recover. Well, Your Honor, this is more like a bare board charter, because literally the state- Well, that's what you're trying to say, but this is not concurrent. That's not- You're talking about overlap. Your Honor, such as in the case in the United States, there's federal law overlapping with state law. Well, I understand that, but we have yet to see a claim, as far as I'm aware, of the United States for harm to species that washed up on the Louisiana Gulf Coast, for instance. And that is why the Mexican states will only claim what they spent through their independent budget. Well, why don't we let Mexico fight it out within, between the nation and the states? At most, you have one claim, it seems to me. Your Honor, all I can tell you is the Mexican states have been working with the Mexican Republic, literally, for the last four years. As a matter of fact, it was the insistence of the governors that I represent that the Mexican Republic file their lawsuit. No filing from the Mexican foreign ministry. No filing in this case, even though the state is asserting parallel claims. And that is why, Your Honor, we are completely independent. We're not asserting or alleging to want to seek their damages. We're independent and autonomous, and we have our own state constitution. And if I may, even on the last point of the islands, constitutionally, Article 3 of the Constitution of Quintana Roo, Article 46 of the Constitution of the State of Veracruz. Those islands are owned by the states. And so, I get it that it's a very complex integration of both systems. Yet, the Republic is not here today opposing us or writing a brief on behalf and or for in support of BP that they are the only ones that they claim and that their damages are the only ones at stake because we're completely independent. All right, Mr. Serna, we asked you several questions, but I'm going to stop you there since you've looped back to your independency point. Yes, Your Honor. You've reserved time for rebuttal. So, we'll hear now from other counsel, and we'll see you back up on rebuttal. Yes, Your Honor. Thank you. All righty. Mr. Langen. May it please the court, Andy Langen for the BP defendants. I'm splitting time with Mr. Jordan and Mr. York. I'd like to start with the case management issues that Judge Jones raised. I think the answer may be in the chronology of what happened here. The appellants brought their lawsuits, the three Mexican states, in September of 2010. The Mexican federal government did not file its lawsuit until April of 2013. We find that at the record on appeal at 15123. So, by the time the Mexican federal government sued, there had already been extensive motion practice and dismissal of most of the Mexican state claims in an order by Judge Barbier of December 9, 2011, in which he dismissed the Mexican states' OPA claims, which, by the way, the Mexican states have not appealed. The Mexican states' appeal before you today does not represent an appeal from the dismissal of their OPA claims. Their only claim- What was the basis for the dismissal? It was the no presentment? It was primarily the point Judge Higginson, you yourself raised, that they had not shown evidence of the existence of a treaty or an executive agreement between any Mexican federal government entity and the United States. But accepting that logic, then, am I right that the Mexican government wouldn't have an OPA claim either, which would mean that no Mexican, even if oil were a foot deep on the beach, there would be no acceptable- Your Honor, we don't know that yet. That's not of record. In other words, what Judge Barbier held in December of 2011 was that the Mexican states had not come forward with a treaty or executive agreement. That issue has not been litigated yet with the Mexican federal government. Their case remains state before Judge Barbier. There's been no motion practice. There's been no similar motion for summary judgment. This was Judge Barbier's assumption, then, that OPA and maritime law are overlapping potential claims for all the claimants? Your Honor, we did, in the trial court, raise the issue of OPA displacement that's now been dealt with in the ACL case. Judge Barbier did not reach that issue in the proceedings with the Mexican states. We have offered as an affirmative alternative grounds for that OPA does displace. Well, what would be the difference? I mean, if OPA doesn't displace here, then it obviously doesn't displace with respect to any of the other claims either, is that correct? I think you're- By the beachside property owners and all that business, it doesn't displace anywhere, admiralty is freestanding and concurrent, as it were. It could be for certain claims. Of course, we know that the federal maritime law claims would be limited, in any event, by the Robbins-Drydock Doctrine, which would not necessarily apply to OPA claims, so there's not complete overlap. But again, just taking this, and OPA's sort of the tail wagging the dog, but it may be more consequential. Yes. As I understand a little bit, I've been able to penetrate into Mexican property law. They've, the restricted zone that prohibited previously foreigners from obtaining beachfront property has been removed. So would the logic be if OPA displaced that Mexicans, state Mexicans, Mexican government couldn't sue, but US owners of beachfront land in Mexico could sue? You know, your honor, I don't know the answer to that. That certainly wasn't presented below us. Right. It's not an issue on this appeal. All I can tell you is, Judge Barbier determined that on the record that the Mexican states, these appellants brought forward, there was no evidence of a treaty. The issue has not been litigated yet with the United Mexican States. It very well could be the same answer will be reached, that there is no treaty that provides reciprocity, but that's not an issue that was presented in the court below. So. Well, why doesn't that, I mean, what claims do the Mexican states assert here, that are not fully comprehended by OPA? I don't think there are any. I, I, but, so, in other words. Then why should we bother even to speculate about the consequences of Robbins Dry Dock, and the Mexican constitution, and the Mexican federal system? Which I think, frankly, I am not satisfied with the level of proof. I am certainly not satisfied with sending it to a jury. Why isn't that the easy way to resolve this? Well, your honor, I don't know if we're saying the same things. We have suggested that the easy way to dispose of the present appeal, given the fact that they didn't appeal dismissal of their OPA claims, is to find that OPA displaces the federal maritime law claims, as was held in ACL by this court recently. But you just told me that OPA and Robbins Dry Dock are not necessarily overlapping. Not 100%, that's correct. But you, but for purposes of this case, you say the claims are fully overlapped. I think so. In, in, in, in other words, in other words, if there was an OPA claim, I believe they would compensate the same damages that there would be found except for under maritime law. I suppose OPA doesn't provide punitive damages, and I suppose that's. That's the big, isn't that the biggest difference? I mean, because Robbins Dry Dock has a limit to economic damages. Right. But OPA covers, OPA's comprehensive, is it not? It, it is comprehensive, yes. I mean, it's total, and it's unlimited, but it doesn't have punitive damages. Are there other differences? So, Judge Barbier has held that OPA does not provide for punitive damages. I would not take the position that OPA liability is unlimited. We think, we'll probably talk about that someday in this court, but, but we think there are strict limits on it by virtue of the words of the statute, by virtue of the application of proximate causations. We think there are limits on OPA damages. But I don't disagree that much of what the OPA, what the Mexican states might be seeking here, would probably be recoverable under OPA if they had an OPA claim. Have the states made claims for lost taxes? Yes, Your Honor. Yes, yeah, the five Gulf states have complaints pending as well as local government entities, yes. Parishes. Parishes as well. Yes, Your Honor. The large part of the ruling below is Robbins-Drydock. The vast majority of briefings from you is Robbins-Drydock. OPA, you're right, I was on the panel, as you know, in ACL, but it's complex, and that's a ruling that was one of first impression, and here we don't even have the benefit of much discussion from the district court, and I'm not criticizing the briefs. It just wasn't in the books. Has been briefed. Hasn't been briefed, so that would be- Has been briefed. Well, in this case, but not extensively at all. It's without very much authority, that's redirecting us to an extremely consequential holding. If my anxieties are right, that an OPA displacement ruling as to foreign claimants here would mean no Mexican can recover at all. We don't know that, but I mean, that's a possibility. Seems like if what we're focusing on is the precondition requirement, that seems like that would be true, and then you've got levels and levels of US claimants that can get it, even as BP has been aggressively pointing out, far away from the beach with no proof of damage. And then you would have a Mexican claimant where, just for sake of argument, you've got a foot of sludge, and they don't get benefit. There is a hypothetical like that. I don't think there was a foot of sludge, but that's- I know, I know, but I'm just- Well, let me be very clear, Judge Higginson. Judge Barbee was correct in holding that they didn't have a proprietary interest under Robbins-Drydog either. What's the best Mexican authority for that proposition, that there's exclusivity here, that their federal structure is so centralized that there isn't ownership? Well, Judge Jones was spot on with Article 27 of the Mexican Constitution, and the general law of national assets. You put those two things together, and you will see that it is the nation, which means under Mexican law, the federal government that owns the natural resources at issue here, and not the Mexican states. Yet in their complaint, they always use the term trusteeship. They don't, to my understanding of the Mexican government's parallel claim, it is not that, it's not worded that way, as exclusive ownership. They term it trusteeship, and does that imply concurrent jurisdiction? There may be some level of concurrent jurisdiction here, but as we explained in our brief, in no case did the Mexican states come forward with evidence that the concurrent jurisdiction resulted in a transfer of proprietary interest. It's just absent in the record. So, they just don't have it, Your Honor. I mean, it is the nation that owns the claim, and the nation means the United Mexican States. Doesn't your brief argue that the word trusteeship is something that they inserted because that was their perception of Robbins Dry Dock, that it wasn't a term of art derived from Mexican law? Yes, Your Honor, and in this case, the Mexican states have sued, saying that they're a trustee, and a trustee of the natural resources. Yeah, so, it is our position that in nowhere have they come forward with evidence. They actually have a proprietary interest in any of the natural resources of the wildlife or any of the things they bring forward. Do you agree with the evidence that he asserts exists in the record as to substantial state involvement with resources in cleanup of these same beaches? But there's some evidence they may have had some responsibility, but no ownership, nothing close to a proprietary interest. In other words, did the federal government ask them to get involved in some degree? That's possible. But never did it transfer to proprietary ownership or proprietary interest, as Robbins Dry Dock and Test Bank and the other cases require. Again, the obvious solution to this would be just to consolidate these cases. Again, I think the chronology, I mean, if you could turn back the clock, perhaps so. I mean, we now have a case in which their open desk claims have been dismissed, and they didn't appeal that. And the United Mexican states did not file their case until April 19th of 2013, after which many of their claims had already been dismissed, and there'd been full briefing of the remainder of their claims under Robbins Dry Dock. Even as the US claimants, is there any matter that's proceeded to the summary judgment stage yet that's resolved the Robbins Dry Dock proprietary interest, or is this the first one? This is the first one, certainly on appeal. I mean, we certainly, Judge Barbier made rulings in other context about private claims that have spelled out some legal principles, including the one I mentioned, that there are no open punitive damages in a whole bunch. He's made a lot of rulings, as the court knows. Help, let me take you back a minute. I thought you were arguing, and maybe I misunderstood your argument about sort of the easiest disposition in this case is holding that OPA displaces all of the appellant's claim. Now, I thought you were saying, and correct me if I'm wrong, that such a holding would be limited to the appellants here, the Mexican states, not some overarching determination that would later foreclose the Mexican government, the Mexican sovereign itself. Is that what you're saying, or what did I miss? Your Honor, that is certainly true. In other words, an OPA displacement argument here, a ruling here would simply say that the appellants here, if they have any claim at all, it's only under OPA, and that claim's already been dismissed because of their failure to bring forward evidence of the evidence of a treaty under 2701A. Right, and notwithstanding whether it's been briefed to the max. Correct. It has been briefed, and it has been argued. Yes. And it fits within our standard rubric that we can decide a case on any basis that the record supports, correct? Yes, Your Honor, that's correct. I just want to make sure I understood the narrowness of the argument vis-a-vis, if that's the route we took, that it only would be respect to the appellants here in this case, the Mexican states, not something that necessarily, implicitly, or unintendedly would be read or could be read to displace any claims that are still in the pipeline of the Mexican government, the Mexican sovereignty of the interest. I agree with Your Honor. I mean, that issue has not been litigated with the United Mexican States yet, and it would have to. But if there were no, if we made an implicit finding there's no treaty, they're going to lose theirs no matter what. It's a precondition for any foreign claimant. Possibly. Well, no, not possibly. Why do you say possibly? It would be sorry decisis, wouldn't it? Well, in other words, if they came forward with evidence of a treaty. Well, but, okay. So, I mean. But you've researched this extensively. To your knowledge at the moment, you've seen no Mexican-US treaty. That's a pretty small group. I'm not aware of one, but that issue is not in the record. We're not litigating that. Correct. At the moment. But, okay. But for us to rule displacement, which was the ruling in ACL, that's a substantial ruling. Are you aware of any other OPA displacement ruling that's yet, no, yeah, that's a very big ruling. No, we have the parish appeals that the US Supreme Court recently denied cert on. That's a little different. That's preemption. I agree with Your Honor. It's a little different, but it's a significant ruling. Yeah. But I also want there to be absolutely no mistake. That's preemption on the wildlife question, correct? Well, it's preemption across all state law claims of any kind. In other words, state penalty law claims, but also general state law of common law. That, our position would be that ruling. The issue that's frontally before us, briefed and decided by Barbier, is it actionable under Robin's dry dock? In this case, in this appeal, that is correct. Yeah. And, all right. But, and by the way, and perhaps I should conclude with this. I want to be very clear that yes, displacement is one avenue. But Judge Barbier was absolutely correct in his construction of Robin's dry dock and in finding that the Mexican states do not have a proprietary interest. And that the Mexican states did not bring forth evidence that they do. Right, the other OPA was just an alternative argument, right? Yes, Your Honor. Excuse me. No, go ahead. Is there any reason to think that Gusty versus Test Bank would allow claims for taxes to go forward? Your Honor, I don't believe claims for taxes to go forward would be allowed under Robin's dry dock because there's no physical touching. Right. But, there might be an OPA claim. There what? There might be an OPA claim for the state of X, Y, and Z. I think the statute contemplates that sort of thing. Okay. So, how about to the beneficiary of the lost taxes in the state of Louisiana? Is that an OPA claim too? I hope not. I think there'll be some remoteness issues and lack of causation and speculation and there'll be a number of defenses to that sort of claim. Thank you. All right, we'll hear from Transocean. May it please the court. I'd like to start with a question that you had, Judge Higginson, which is keeping in mind that this is in the context of a summary judgment. You asked a very pertinent question on Robin's dry dock to the other side. What is your best portion of Mexican law? And, you know, supporting the Mexican state's claim, you asked the same thing of our side. I think that Mexican law is actually quite clear that all of the natural resources and assets are owned by the Mexican federal government. Now, we've mentioned, Judge Jones pointed out, in Article 27, Paragraph 1, and I want to link, there's two of them. It's Article 27 together with Article 42, because Article 27, Paragraph 1 says that ownership of the lands and waters within the boundaries of the national land territory, which is a term of art, is vested originally in the nation, which has had and has the right to transmit thereof to private persons, thereby constituting private property. Article 42 of the Mexican Constitution defines the national land territory. It says its land territory is comprised of all portions constituting the federation, the territory of the islands, including the reefs and keys and adjacent seas, the continental shelf and the seabed and subsoil of submarine areas of the islands, and the waters of the territorial seas. Your time's short. Yeah.  What was it called? Intox, or there was that enormous one? I believe so, yes. Okay. And there was no litigation in the Mexican court system under Mexican law as to states having? Your Honor, I can't speak to whether or not the states independently in that situation made a claim. But what I can say, in the brief time I have, and I think this is important, Judge Higginson, is that this constitutional provisions are also implemented in the general law on national assets. Two separate provisions of that law, Article 16 and Article 70, say expressly that concessions and destination agreements or administration agreements like the Mexican states have pointed to convey no in rem rights, no real rights. And rather, the Mexican Constitution is clear that its ownership is inalienable, and the general law on national assets also said that the Mexican federal government's ownership is inalienable. Can I ask one question? I mean, was I right in my very minimal understanding of Mexican property law? Let's say a US citizen now owns Mexican beachfront. How would this play out? Would that individual then have proprietary interest, whereas the Mexican state wouldn't? Well, briefly, Judge Higginson, there's a very difficult, in order to do that, with the Mexican federal government, there's a disincorporation process that has to happen. To have land actually disincorporated from the Mexican federal government entity, there's, needless to say, there's no proof of anything like that here, whether it's with regard to an individual or a state. All right, thank you, sir. Halliburton? May it please the court. My name is Alan York, representing Halliburton. As batting cleanup here today, I don't have too many things to say, but I do want to make a couple of quick points. Of course, we join the arguments that have been made by VP in transition with regard to Judge Barbier's proper analysis of this case. In finding that the Mexican states do not have a proprietary interest. There are a couple of very specific evidentiary points that were raised in some of the Mexican states' briefing that I do want to address. For example, in the argument even today, the Mexican states say that the, while the Mexican constitution does define the rights as between the Mexican federal government and the Mexican states, that the constitution itself does not define the nation, as it were. Both Judge Barbier's opinion and the briefs of the parties point out that there is, in fact, a Mexican Supreme Court opinion that does define the nation. And that that definition does specifically state that the nation refers to the federal government of Mexico and not to the individual state governments. Secondarily, the Mexican states claim in their briefing that the Halliburton expert that provided an affidavit at the summary judgment briefing stage conceded that there was some level of property interest based on use or exploitation of certain property by the Mexican states. Number one, Halliburton, of course, states that that is an incorrect characterization of the expert opinion. And in fact, what our expert says was he cited relevant Mexican law for the proposition that a concession creates, at most, personal rights and no in-rim rights, which is one of the things that Mr. Jordan was just mentioning a moment ago. If we were to reach the OPA, your client would not be a responsible party under the OPA, is that right? That is correct, Judge Higginson. We are not an OPA responsible party. We were never named an OPA responsible party. We do point out in our briefing that even if the court does reach the OPA displacement argument, we have argued consistently in the district court and have referenced it for this court that even as an OPA non-responsible party, we do believe that OPA would displace any general maritime law claims such that under the structure of OPA, the claimants would need to make claims directly against the OPA responsible parties, with the OPA responsible parties potentially having a statutory contribution right back against non-responsible parties. We've consistently argued that if OPA displacement does apply, it applies equally to OPA. So that's another reason that BP isn't more forcefully arguing OPA displacement here, that it can maintain other defendants on the hook, is that right? Well, Your Honor, I won't attempt to speak to BP's motivations, but I do know that they have argued OPA displacement here. They've briefed it in their briefs. We take a slightly different position. We don't think the court needs to reach it here. But our position is that should the court reach it, it applies equally to non-OPA. Let me ask you one other question. If we were to reverse the summary judgment, would these questions of interpretation of Mexican law go back to a jury? I don't believe that questions of, since they are questions of law, I don't think they would be appropriate for a jury. Well, there's a federal rule of 44 deals with the proof of foreign law, so I was just wondering. So that's always something for summary judgment. I think it's, yes, Your Honor, I think in this- Okay, thank you. All right, thank you. Move back to you, Mr. Cerny. And just very quickly, the Mexican states provided declarations that were sworn. That's proof. Judge Barbier ignored the declarations of the Minister of the Environment of the state of Quintana Roo. People get on the stand every day and raise their hand. Your Honor. Swear to tell the truth, the whole truth, and nothing but the truth. Your Honor. And they take oaths, so I mean, why is that dispositive when there is a vested interest, if you will, in making the declaration? So I mean, why, in and of itself, the fact that they made the declaration means that the trial court was bound by it? Your Honor, it was proof that was submitted and the court must take it in the light most favorably. It was in support of the motion for summary judgment, and it was in response to the motion for summary judgment. Now- Well, that's true, but qualitatively, it's still not any different than what we see all the time in a Rule 56 context in terms of a declaration. And, Your Honor, the Mexican states asked Judge Barbier that we would go on and take depositions. And Judge Barbier did not allow depositions of any of the Mexican experts. Rule 44-1 says that determining foreign law, the court may use any relevant material or source, including testimony. Whether or not submitted by a party or admissible under the federal rules of evidence, the court's determination must be treated as ruling on a question of law. So basically, the court was making a legal determination based on how it evaluated the competing affidavits there, which it is unlike a fact determination, which would, where it's not allowed to weigh the facts. Your Honor, what I have to say to that effect is that the three experts that the Mexican states had back up the declarations of the ministers. They are one and the same. So legally, what the minister said, it's the same thing that the Mexican state's experts concluded. And let me just raise a few issues independently of the fact. You were talking about someone in Mexico being a US citizen trying to reclaim. There is a case ongoing in DM Dale 2179 called GTT. It's Grupo Turistico Tamaulipas against BP et al. It was also consolidated. Those happen to be Spanish owners that own land in Tamaulipas, and their land got dirty with oil, and they were subjected to cleanups, and they are also impacted, and it was going to be a big project in the state. That lawsuit is still ongoing as part of the MDL 2179, and so the notion that only the Republic of Mexico can file, and that is inalienable and a fallacy, because here's a private line donor being able to also file for their own cleanup costs and expenses, similar to what is also going on here in the US. They're bound by OPA section 2707. Your Honor, as I've been consistent with this court, I don't think there's a treaty or an executive agreement. And if you displace maritime law through OPA, even though we've supported it with some US Supreme Court decisions that they can run in parallel, nobody south of the border will ever have a remedy if OPA is the exclusive remedy. That's what Congress clearly foresaw when it passed OPA. It could only almost, aside from vessels, it had to be thinking about Mexico and Canada. Now, OPA predated NAFTA, so maybe there's something, some remedy under NAFTA or something. Your Honor, you also raised some issues regarding more Mexican law and the general law of ecological balance and environmental protection. Says that participation in environmental emergencies and contingencies pursuant to the civil defense policies and programs are to be run by the states and the federal government concurrently. Article four, the federal government, the states, the federal district, and the municipalities shall exercise their powers in matters of ecological balance, preservation, and restoration and environmental protection, pursuant to the distribution of authority provided for in this law and in other laws. It's all concurrent. Let me ask you a question. Suppose we were to affirm the district court, what further remedy would the Mexican states have? I would have to talk to our governors, but they would probably want us to go to the Supreme Court. Well, I know of the US, would they have a remedy in Mexican courts? I don't believe so, because Mexican courts will tell you to the situs of the accident, which is in territorial waters of the United States. They were not entertained in it, and that's why we haven't raised it in this behalf. No, I mean vis-a-vis the federal, if you say that the Mexican, if you believe that the rulings of the American courts on the federal situation in Mexico were incorrect, and the federal government of Mexico gets money, then would the states be able to sue the federal government of Mexico for a share of the settlement or whatever? Your Honor, I don't believe so. They are different tracks, and the Mexican states are completely independent and autonomous. And I beg this court not to overlook the fact that they're independent states with separate claims. And the Mexican states and the federal government do have concurrent laws. And if this court was to displace, was to say maritime law is not a remedy, any and all foreigners that were damaged by this oil spill, which is one body of water, would not have a remedy. And so, we beg the court to look at the Supreme Court cases in the county of Inuita and Northwest Airlines and others that we've cited in our briefs to that effect. But please do not overlook the fact that the experts that the Mexican states provided, with no depositions, and the ministers say the same thing. So we did provide proof, and it's well briefed in our briefs. All right, thank you, Mr. Cerna. I believe we have your argument. Thank you for the briefing and the argument. This case will be submitted. The panel will stand in a short